**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Korina Comstock | ) | CASE NO. |
| 2497 Township Road 55 | ) | |
| Bellefontaine, Ohio 43311 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| KENTON NURSING & REHABILITATION | ) | |
| CENTER, LLC | ) | **JURY DEMAND ENDORSED** |
| 117 Jacob Parrot Boulevard | ) | **HEREIN** |
| Kenton, Ohio 43326 | ) | |
| | ) | |
| **Serve also:** | ) | |
| KENTON NURSING & | ) | |
| REHABILITATION CENTER, LLC | ) | |
| c/o Cogency Global Inc. | ) | |
| 3958-D Brown Park Drive | ) | |
| Hilliard, Ohio 43026 | ) | |
| | ) | |
| KENTON FACILITY OPERATIONS, | ) | |
| LLC | ) | |
| c/o Corporation Service Company | ) | |
| 50 West Broad Street, Suite 1330 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Korina Comstock, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

**PARTIES, JURISDICTION & VENUE**

1. Comstock is a resident of the City of Bellefontaine, Logan County, Ohio.

2. Kenton Nursing & Rehabilitation Center, LLC ("Kenton Nursing") is a foreign limited liability company that operated a business located at 117 Jacob Parrot Boulevard, Kenton, Hardin County, Ohio 43326.

3. Kenton Nursing was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Comstock is alleging a Federal Law Claim under the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq*., and the Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq*.

5. All material events alleged in this Complaint occurred in Hardin County, Ohio.

6. This Court has supplemental jurisdiction over Comstock's state law claims pursuant to 28 U.S.C. § 1367 as Comstock's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 300 days of the conduct alleged below, Comstock filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00146 against Kenton Nursing.

9. On or about June 7, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Comstock regarding the Charges of Discrimination brought by Comstock against Kenton Nursing in EEOC Agency Charge No. 473-2021-00146.

10. Comstock received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

11. Comstock has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Comstock has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

13. Comstock is a former employee of Kenton Nursing.

14. In or around July 2018, Comstock began working for Kenton Nursing.

15. Kenton Nursing employed Comstock as a Licensed Practical Nurse ("LPN").

16. In March 2020, Comstock learned she was pregnant.

17. Comstock's pregnancy was considered a high-risk pregnancy ("Pregnancy Complications").

18. Comstock's Pregnancy Complications included gestational diabetes.

19. Comstock's Pregnancy Complications included high blood pressure.

20. Comstock notified Bev McKean about her high-risk pregnancy.

21. Kenton Nursing employed McKean as the Director of Nursing.

22. McKean was Comstock's supervisor.

23. During all material events asserted herein, McKean had and/or has authority to hire, fire, and/or discipline employees.

24. McKean did not participate in the decision to hire Comstock.

25. Comstock experienced several difficult pregnancy symptoms ("Pregnancy Symptoms").

26. Comstock's Pregnancy Symptoms included frequent nausea and vomiting.

27. Comstock's Pregnancy Symptoms made it difficult to work the usual twelve-hour shifts.

28. As a result of Comstock's Pregnancy Symptoms, Comstock requested from McKean a schedule with eight-hour shifts instead of the usual twelve-hour shifts.

29. In February and March 2020, the COVID-19 pandemic began to severely affect the United States.

30. Kenton Nursing would not permit Comstock to work eight-hour shifts instead of twelve-hour shifts once the COVID-19 pandemic was in effect.

31. R.C. § 4101.11 imposes on employers the duty to take necessary steps to protect employees adequately in the workplace, including sanitizing and providing adequate personal protective equipment ("PPE") to employees as necessary.

32. The CDC has provided guidance concerning PPE use for the healthcare industry and essential workers.

33. OSHA has identified necessary PPE requirements based on degree of risk of COVID-19 exposure an employee may face in their workplace.

34. Kenton Nursing did not provide adequate PPE and cleaning supplies to employees.

35. In April and May 2020, Comstock complained to McKean every day she worked that Kenton Nursing lacked the requisite PPE and cleaning supplies.

36. In April and May 2020, Comstock complained to Kenton Nursing's supplier every day she worked that Kenton Nursing lacked the requisite PPE and cleaning supplies.

37. In response to Comstock's complaints, Kenton Nursing did not supply the requisite PPE and cleaning supplies.

38. As a result of Comstock's Pregnancy Symptoms, Comstock took four weeks of FMLA leave from mid-April to mid-May 2020.

39. Comstock returned from FMLA leave on or about May 17, 2020.

40. On or about May 26, 2020, McKean informed Comstock that Kenton Nursing was terminating Comstock's employment.

41. McKean told Comstock that the reason for termination was that Kenton Nursing was short-staffed and required employees to work full time without restricted hours.

42. McKean told Comstock that the reason for termination was that Kenton Nursing needed to replace Comstock with someone who did not need to take pregnancy leave.

43. The pregnancy leave McKean referred to as the reason for termination should have been covered by protected FMLA leave.

44. Kenton Nursing terminated Comstock's employment in retaliation for requesting protected FMLA leave.

45. Kenton Nursing terminated Comstock's employment in order to stop her from seeking further protected FMLA leave.

46. Kenton Nursing's stated reason for termination is pretext for pregnancy discrimination.

47. In the alternative, Kenton Nursing's stated reason for termination is not the actual reason for termination.

48. In the alternative, Kenton Nursing terminated Comstock's employment in retaliation for her complaints about inadequate PPE and cleaning supplies.

49. Upon information and belief, Defendant has a progressive disciplinary policy ("Progressive Discipline Policy").

50. Defendant has used the Progressive Discipline Policy when disciplining non-pregnant employees.

51. Defendant has used the Progressive Discipline Policy when disciplining employees who have not complained of safety issues in the workplace.

52. Defendant has used the Progressive Discipline Policy when disciplining employees who have not taken protected FMLA leave.

53. Defendant has used the Progressive Discipline Policy when disciplining employees who were not eligible for further protected FMLA leave.

54. Under Progressive Discipline Policy, Comstock had not received any meaningful discipline.

55. Under Progressive Discipline Policy, Comstock had not received any written warnings.

56. Under Progressive Discipline Policy, Comstock had not been suspended.

57. Defendant skipped steps under the Progressive Discipline Policy when they terminated Comstock's employment.

58. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

59. Skipping steps under the Progressive Discipline Policy is an adverse action.

60. Terminating Comstock's employment was an adverse employment action.

61. Terminating Comstock's employment was an adverse action.

62. Defendant knowingly skipped steps under the Progressive Discipline Policy when they terminated Comstock's employment.

63. Defendant intentionally skipped steps under the Progressive Discipline Policy when they terminated Comstock's employment.

64. Defendant willfully skipped steps under the Progressive Discipline Policy when they terminated Comstock's employment.

65. Defendant knowingly committed an adverse employment action against Comstock.

66. Defendant intentionally committed an adverse employment action against Comstock.

67. Defendant willfully committed an adverse employment action against Comstock.

68. Defendant knowingly committed an adverse action against Comstock.

69. Defendant intentionally committed an adverse action against Comstock.

70. Defendant willfully committed an adverse action against Comstock.

71. Defendant knowingly terminated Comstock employment.

72. Defendant intentionally terminated Comstock's employment.

73. Defendant willfully terminated Comstock's employment.

74. The above facts demonstrate Defendant engaged in a pattern and practice of pregnancy discrimination.

75. The above facts demonstrate Defendant engaged in a pattern and practice of retaliation.

76. There was a causal connection between Comstock's pregnancy and Defendant'stermination of Comstock's employment.

77. There was a causal connection between Comstock's workplace safety complaints and Defendant's termination of Comstock's employment.

78. There was a causal connection between Comstock's use of FMLA leave and Defendant's termination of Comstock's employment.

79. There was a causal connection between Comstock's eligibility for further protected FMLA leave and Defendant's termination of Comstock's employment.

## COUNT I: PREGNANCY DISCRIMINATION IN VIOLATION OF
## 42 U.S.C 2000e-2 *et seq*.

80. Comstock restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

81. Comstock is a member of a statutorily protected class based on her gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C 2000e-2 *et seq*.

82. Title VII of the Civil Rights Act of 1964 prohibits pregnancy discrimination in employment-related matters.

83. Defendant treated Comstock differently than other similarly situated employees based on her pregnancy.

84. Once informed of Comstock's pregnancy, Defendant discriminated against Comstock because of her pregnancy.

7

85. Defendant terminated Comstock's employment without just cause.

86. Defendant terminated Comstock's employment based on her pregnancy.

87. Defendant's discrimination against Comstock based on her pregnancy violates 42 U.S.C. 2000e-2 *et seq*.

88. Comstock suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 2000e-2 *et seq*.

89. As a direct and proximate result of Defendant's conduct, Comstock suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: PREGNANCY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

90. Comstock restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

91. Comstock is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

92. R.C. § 4112.01(B) clarifies that "because of sex" includes "because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions."

93. R.C. § 4112.01(B) states: "Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work."

94. Defendant treated Comstock differently than other similarly situated employees based on her pregnancy.

95. Once informed of Comstock's pregnancy, Defendant discriminated against Comstock because of her pregnancy.

96. Defendant terminated Comstock's employment without just cause.

97. Defendant terminated Comstock's employment based on her gender.

98. Defendant's discrimination against Comstock based on her pregnancy violates R.C. § 4112.01 *et seq.*

99. Comstock suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

100. As a direct and proximate result of Defendant's conduct, Comstock suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

101. Comstock restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

103. Kenton Nursing is a covered employer under the FMLA.

104. During her employment, Comstock qualified for FMLA leave.

105. During her employment, Comstock requested FMLA leave for her pregnancy.

106. Defendant failed to properly advise Comstock of her rights under the FMLA.

107. Defendant unlawfully interfered with Comstock's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

108. Defendant violated section 825.300(c)(1) of the FMLA and interfered with Comstock's FMLA rights when Defendant did not honor Comstock's approved use of FMLA leave.

109. Defendant unlawfully interfered with Comstock's exercise of her rights under the FMLA by terminating her employment in anticipation of her further approved FMLA leave.

110. As a direct and proximate result of Defendant's conduct, Comstock is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

### COUNT IV: RETALIATION IN VIOLATION OF THE FMLA

111. Comstock restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

112. During her employment, Comstock utilized FMLA leave.

113. After Comstock utilized her qualified FMLA leave, Defendant retaliated against her.

114. Defendant retaliated against Comstock by terminating her employment.

115. Defendant willfully retaliated against Comstock in violation of U.S.C. § 2615(a).

116. As a direct and proximate result of Defendant's wrongful conduct, Comstock is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

### COUNT V: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

117. Comstock restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

119. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

120. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

121. On March 22, 2020, Governor Mike DeWine and the Ohio Department of Health issued a Stay at Home Order, ordering most people to remain home.

122. Ohio has a strong public policy to stop the spread of the COVID-19 virus.

123. Per the Stay at Home Order, individuals who have COVID-19 virus symptoms should self-quarantine for a certain period of time, or until they are able to receive a negative result from a COVID-19 virus test.

124. As a result of the COVID-19 pandemic, the CDC and OSHA released guidelines for proper workplace safety for healthcare and essential workers.

125. Comstock complained that Kenton Nursing was not supplying the requisite cleaning supplies or PPE for employees.

126. Comstock complained that the lack of cleaning supplies and PPE for employees was unsafe given the COVID-19 pandemic.

127. Kenton Nursing terminated Comstock's employment after she complained about the lack of cleaning supplies and PPE.

128. Defendant's termination of Comstock jeopardizes these public policies.

129. Defendant's termination of Comstock was motivated by conduct related to these public policies.

130. Defendant had no overriding business justification for terminating Comstock.

131. As a direct and proximate result of Defendant's conduct, Comstock has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Korina Comstock demands from Defendant the following:

(a) Issue an order requiring Kenton Nursing to restore Comstock to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Comstock for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Comstock's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Fred M. Bean (0086756)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
       fred.bean@spitzlawfirm.com

*Attorneys For Plaintiff Korina Comstock*
13

## JURY DEMAND

Plaintiff Korina Comstock demands a trial by jury by the maximum number of jurors permitted.

                                                */s/ Trisha Breedlove*
                                                Trisha Breedlve (0095852)
                                                Fred M. Bean (0086756)